**FISHER v. SNYDER.**

District Court, S. D. Texas, at Houston. July 11, 1928.

No. 1035.

1. Attachment ⬤⟹131—Under Texas statute, amount of bond for attachment on unliquidated demand is committed to judge's discretion (Rev. St. Tex. 1925, art. 281).

Under Rev. St. Tex. 1925, art. 281, providing that amount of bond for attachment on an unliquidated demand shall be fixed by the judge, attachment cannot be defeated on the ground of inadequacy of the amount so fixed; the fixing thereof being committed to the judge's discretion.

2. Attachment ⬤⟹131—Demand under contract for 10 per cent. of profits of sale held not unliquidated, so as to allow amount of attachment bond to be fixed by judge; "unliquidated demand" (Rev. St. Tex. 1925, art. 281).

Where plaintiff is suing to recover the 10 per cent. of profits in the sale of properties by defendant, to which by terms of their contract he was entitled for services, though he alleges fraudulent representations and concealment of the facts, and asks for exemplary damages, the demand is not unliquidated, as is necessary under Rev. St. Tex. 1925, art. 281, to allow the amount of the bond to be fixed by the judge, but is liquidated, having no element of uncertainty in it at all, except as to whether the facts on which claim is based occurred.

[Ed. Note.—For other definitions, see Words and Phrases, Unliquidated Demand.]

At Law. Action by A. S. Fisher against Joseph Snyder. Dismissed.

See, also, Massman v. Snyder, 27 F.(2d) 542.

A. D. Dyess and Hirsch, Brown & Susman, all of Houston, Tex., for plaintiff.

King & Wood, of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is a special appearance by defendant, Snyder, who is a resident citizen of New York, in a case removed by him from the district court of Harris county, Texas, for the purpose of dissolving and quashing an attachment and writ of garnishment relied on by plaintiff for jurisdiction.

Plaintiff, on February 4, 1928, filed in the district court of Harris county his petition, alleging in substance that the defendant, being engaged in 1917 and 1918, in connection with one Massman, in acquiring leases and properties at Big Hill, east of the town of Matagorda, advised plaintiff of his activities and enlisted plaintiff's assistance in carrying them out, advising plaintiff that his plan was to sell the properties and to reserve an overriding royalty in the sulphur of approximately $1 per ton; plaintiff in

some of the conversations asking defendant what interest he should have in the block of sulphur properties which defendant desired to obtain, and suggesting to the defendant that plaintiff's interest in the profits should be 10 cents per ton on the overriding sulphur royalty, and where the sulphur royalty was more or less plaintiff's payments should be diminished or increased, putting plaintiff in on the arrangement on a basis of 10 per cent. of the profits; that this suggestion was agreed to by defendant, and upon that understanding plaintiff assisted defendant in acquiring the desired properties, the petition naming certain properties as acquired by or through plaintiff's activities, and as being properties in which plaintiff should have the interest claimed.

Plaintiff then alleges: That at a later date, in 1919, defendant advised plaintiff that he had arranged to transfer the properties, which had been acquired through his and plaintiff's joint efforts, along with others, to the Texas Gulf Sulphur Company in order to save Massman from loss on money advanced by him and that the defendant Snyder had received nothing whatever as profits in the transaction. Plaintiff believed this statement to be true and relied upon it. That defendant shortly after removed to the state of New York, and has resided there ever since. That in the winter of 1927 plaintiff first learned, defendant having kept him in ignorance until that time, that defendant had made a large sum of money out of his transaction with Massman and plaintiff. That the Texas Gulf Sulphur Company had paid to Snyder individually 10,000 shares of the original stock of such corporation. That by reason of stock divided and a reorganization of the Texas Gulf Sulphur Company the defendant was issued 4 shares of stock for every one of the 10,000 shares of original stock held by him and that each share of stock in the reorganized company has a market value of $78 per share, or a gross value of more than $3,100,000, and that by reason of the contract and agreement existing between the plaintiff and defendant plaintiff was and is entitled to receive a one-tenth part thereof, to plaintiff's damage in the sum of $310,000. Plaintiff further alleges that defendant has received $500,000 dividend on stock held by him, of which plaintiff is entitled to $50,000.

Plaintiff, pleading in the alternative, alleges that, if it should appear that his services were performed upon a quantum meruit, the reasonable and fair value to him is 10 per cent., making his damages from defendant's failure to pay him any part of such profits, to plaintiff's damage, in the sum of $351,000, and he further alleges that by bad faith and active fraud in attempting to steal the profits from him, and to cheat and swindle, plaintiff is entitled to recover as exemplary damages $250,000.

Plaintiff's petition concludes with the prayer that defendant be cited, that the action be converted into an action in rem by a writ of garnishment, directed to the Texas Gulf Sulphur Company, and that defendant, Snyder, be required by order of the court to file an accounting under oath, showing all profits of every kind received by him, and that plaintiff be given judgment for his debt, damages, actual and exemplary, and general and special relief, in law and equity.

On the filing of that petition the plaintiff made affidavit for a writ of garnishment against the Texas Gulf Sulphur Company, alleging that plaintiff had instituted a suit for debt against Joseph Snyder, defendant, to recover the sum of $351,000 actual damages and $250,000 exemplary damages; that such debt is just, due, and unpaid; that defendant has not property in his possession within the state, subject to execution, sufficient to satisfy such debt, and affiant has reason to believe and does believe that the Texas Gulf Sulphur Company is indebted to the defendant, and has in its hands effects belonging to the defendant. Upon such affidavit plaintiff prayed that the judge of the court fix the amount of the bond. Whereupon the judge of the court, under date of February 4, 1928, directed that a writ of garnishment issue upon a bond in the sum of $5,000, payable to the defendant, Joe Snyder.

Thereafter, the garnishment having issued, garnishee answered to the writ, excepting thereto as insufficient in law, and among other reasons that the bond was not set as required by the statutes, not being for double the amount claimed. Upon the hearing of these exceptions, the Judge of the District Court entered his order, sustaining all of them, and specifically that the bond was not such as is required by the statute. Thereafter, upon application of plaintiff, his garnishment was dismissed.

On March 7, plaintiff on the same petition, applied for and obtained citation by publication on Joseph Snyder as a nonresident. On March 8, after the dismissal of the writ of garnishment, plaintiff filed an affidavit for writ of attachment, alleging that the suit was founded upon an unliquidated demand, and that the defendant, Joseph

Snyder, was a nonresident of the state of Texas; that defendant Snyder was justly indebteded to plaintiff in the sum of $351,-000 as actual and $250,000 as exemplary damages, and in other sums, the amount of which plaintiff does not know, and is therefore unable to state, and praying that the court fix the bond for attachment in the sum of $10,000. Writs of attachment were thereafter issued to Harris county on March 8, returned unexecuted, and on March 9 to Liberty county, returned not executed, and on the 8th of March plaintiff applied for a garnishment against the Texas Gulf Sulphur Company upon which writ issued, to which garnishee made answer and filed exceptions.

Prior to the return day the defendant, Joseph Snyder, caused the proceedings, main and ancillary, to be removed into this court, and the matter now stands on the exceptions and motion of the moving defendant to dismiss for want of jurisdiction because of defects in the writs of attachment and garnishment, upon the validity of which jurisdiction depends.

Until the amendment of 1913 no attachment could issue under the laws of Texas, except upon a bond in double the amount of the claimed debt, and none .could issue in any event upon a claim sounding in tort, or on an unliquidated demand. In that year there was enacted article 247a (now article 281, Rev. St. 1925):

"Provided, that nothing in this chapter shall prevent the issuance of attachments in suits against persons, copartnerships, associations or corporations upon whom personal service cannot be obtained within this state, founded in tort or upon demands which are unliquidated; but where the demand is unliquidated the amount of bond to be made by the plaintiff shall be fixed by the judge or clerk of the court or by the justice of the peace issuing the attachment and the bond shall be made in the sum so fixed and upon the approval and filing of same the attachment shall issue as in other cases."

. Article 271, Rev. St. 1911, then and now (article 4076) provides that a writ of garnishment may issue where an original attachment has been issued. Whether plaintiff's rights are valid depends upon whether plaintiff's case, on his pleadings and affidavit, come within this section.

The defendant attacks the entire proceedings on the ground that it is unconscionable to impound, as shown by the garnishment, property of the value of $4,000,000 on a nominal bond of $10,000, and that, irrespec-

tive of any other consideration, the proceedings should fall for insufficient bond. He attacks the proceedings further on the grounds (1) that the petition shows on its face that the suit is a mere fishing demand for an accounting, there being no sufficient facts stated to support the claim, and that the use of attachment processes for such a demand is such an abuse of the right as that it avoids it; (2) that neither the petition nor the affidavit shows a demand such as conforms with the statutes for attachment; (3) that the suit is not upon a tort, nor upon an unliquidated demand, and for that reason article 281 is not applicable; and (4) that the suit is upon a liquidated demand, and therefore the statute does not apply.

[1] To the position of the defendant that the situation is unconscionable, in that the bond is inadequate to the amount of the property seized, I think the statute furnishes the answer, and, if plaintiff has otherwise complied with it, his attachment cannot be defeated by the fact that the judge of the court fixed an inadequate bond, since to the discretion of that judge the Legislature has committed the fixing of the bond.

[2] Upon the other questions, however, the matter stands differently, and it is my opinion that defendant is entitled to the relief asked. Plaintiff in fact conceded that his affidavit is not in accordance with the statute, in that the amount stated to be due is stated, not as a fixed demand, but partly fixed and in part uncertain. Such an affidavit will not support an attachment. Plaintiff, however, while admitting this defect, asks to amend it under the statutes of the United States allowing amendment in matters of defect in form. If plaintiff's writ was quashable only because of uncertainty in the amount due, I believe that the authorities would permit the amendment asked.

But plaintiff's situation does not permit of such amendment, for, whatever may be said of defendant's position that plaintiff's case plainly appears to be a mere fishing suit for discovery, and not a positive statement of facts by which the amount claimed could be supported, I think defendant's position that the suit is not upon an unliquidated demand entirely sound, and that plaintiff can have no attachment for the demand, except by making bond in double the amount of his debt. That plaintiff's suit is not the character of suit contemplated by article 281 I think the slightest reflection makes clear.

As has been stated, prior to the passage

of the amendatory statute no attachment could issue, except for a debt, and then upon definite allegations and definite security in double the amount of the debt. In order to provide a remedy for plaintiffs, where defendants lived outside of the jurisdiction, the statute was amended as above to permit suit upon torts or upon unliquidated demands, where personal service could not be obtained; and the Legislature, having in view the fact that suits upon unliquidated demands always sounded for far more than the recovery, made the reasonable provision that in such suits the bond need not be double the amount of the claim, but might be fixed by the judge in the light of the particular suit, in order thereby to make a remedy effective to plaintiffs having such suits which would probably be unavailable to them, if required to give bond in double the amount of the claim.

It will be noted that the Legislature did not provide, as plaintiff seems to think, that where the demand is founded *in tort* the judge or clerk might fix the bond. The only case, whether upon tort or otherwise, in which the judge may fix the bond, is where the demand is unliquidated, illustrating the care with which the Legislature avoided the creation of a condition such as plaintiff claims arises here, where a plaintiff, having a demand upon contract, could deliberately waive the contract feature and sue as upon tort, avoiding the obligation to make the double bond through resort to article 281.

Whether, therefore, plaintiff's suit is on contract or in tort, as claimed by him, is for the purpose of this action immaterial, though I think it plain his suit is upon contract, for it cannot be that by the simple device of claiming exemplary damages a suit such as this, which seeks to hold a defendant to an accounting for property claimed to have been wrongfully withheld from plaintiff, together with the income and proceeds therefrom down to the present date, can be converted into a tort action.

The pleading in its every line speaks a suit for an accounting, and nowhere more significantly than in the allegation of plaintiff that the defendant is liable to him, not merely for his proportion of the stock issued in 1919, but for his proportion of the dividends which have since accrued thereon and all the reissues flowing out of and accruing to the original issue. If, however, it is conceded, as plaintiff contends, that his action is in tort, this does not avail him; for,

whether it be regarded as in tort or on contract, it is not for an unliquidated demand.

Few terms used in the law are used with as many variant meanings as this one, and its proper construction must be determined by the particular context in which it appears. Appearing as it does in an attachment statute, its meaning must, of course, be determined by the decisions arising on attachments, and these decisions leave no room for question that plaintiff's demand is a liquidated demand, having no element of uncertainty in it at all, except the uncertainty of whether the facts which the plaintiff claims the right springs from did or did not occur. Such uncertainty does not make the demand unliquidated.

Hale Bros. v. Milliken, 142 Cal. 139, 75 P. 655, contains a definition of the term as applied to attachments which I think excellent: "As to the meaning of the term 'unliquidated damages', appellant cites Wade on Attachments, § 23. The author shows that there is no necessary objection that the *damages are unliquidated;* that the meaning intended to be conveyed by these terms is merely that the amount plaintiff is entitled to recover shall be ascertained or ascertainable by reference to the contract, and proof of what was done under it; that the standard by which defendant's liability is to be measured shall be furnished by the contract, and not left open to mere speculation or vague conjecture. ⁕ ⁕ ⁕ The author states: 'What is required is that the damages may be readily ascertained, and the basis of computation employed by plaintiff should appear to be reasonable and definite.'" To the same effect are all the decisions of the Texas courts.

The standard illustration of an unliquidated demand is, of course, a suit for damages for personal injuries. There, while the elements which may be considered are fixed, the amount which may be allowed is entirely indefinite, the result of conjecture and opinion; whereas, where the basis of recovery is fixed by the terms of the contract, as here, the amount of that recovery is bound to be liquidated, because it is merely the application to the subject-matter as established by the evidence of the basis agreed upon in the contract.

I think it, therefore, plain that plaintiff's petition is not amendable, and that the writ of attachment and the garnishment supported by it must fall.